## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**ALLEN J. LOTTINGER**                          **CIVIL ACTION**

**VERSUS**                                      **NO. 13-6193**

**STATE FARM FIRE AND CASUALTY COMPANY**        **SECTION: "G"(2)**

## ORDER AND REASONS

This litigation concerns a dispute between an insurance policyholder and his insurance company that arose after Hurricane Isaac hit New Orleans and allegedly damaged the policyholder's home.[1] Before the Court is Plaintiff Allen J. Lottinger's "Motion to Remand."[2] After considering the pending motion, the memorandum in support, the memorandum in opposition, the record, and the applicable law, the Court will grant the pending motion.

## I. Background

On August 28, 2012, Hurricane Isaac made landfall in the New Orleans area and purportedly damaged Plaintiff Allen J. Lottinger's property.[3] Lottinger, who claims that he contracted with Defendant State Farm to insure his property against the risk of loss or damage caused by wind and wind-driven rain, alleges that he notified State Farm of the damage in a timely manner.[4] According

---

[1] Rec. Doc. 1–2 at 3–4.

[2] Rec. Doc. 8.

[3] Rec. Doc. 1–2 at 3–4.

[4] Rec. Doc. 1–2 at 4.

to Lottinger, State Farm then sent a claims adjuster to examine his property.[5] That adjuster, Lottinger claims, made an inadequate determination of the damage.[6]

On August 28, 2013, Lottinger filed suit against State Farm in the Civil District Court for the Parish of Orleans.[7] In his state court petition, Lottinger claims that State Farm failed to provide "a sufficient amount of any money," and consequently is liable to him under theories of: (1) "breach of contract"; (2) "breach of duty of good faith and fair dealing"; (3) "bad faith claims adjusting";,and (4) "any and all other legal theories which may be found through discovery and proven at trial in this matter."[8] State Farm removed the action to this Court on October 18, 2013,[9] and Lottinger filed the pending "Motion to Remand" on November 18, 2013.[10]

## II. Parties' Arguments

Lottinger, in his motion, argues that the Court lacks subject matter jurisdiction over the case because he has "renounced his right to enforce a judgment over $75,000" and "certifies to the Court that the amount in dispute is $75,000 or less," requiring the Court to remand the action.[11]

In opposition, State Farm asserts that Lottinger did not limit his recovery to $75,000 or less until he filed the present motion.[12] According to State Farm, when a federal court establishes upon

---

[5]  *Id.* at 4.

[6]  *Id.*

[7]  *Id.* at 1.

[8]   Rec. Doc. 1–2 at 4–5.

[9]  Rec. Doc. 1.

[10]   Rec. Doc. 8.

[11]  Rec. Doc. 8–1 at 4–5.

[12]   Rec. Doc. 11 at 3.

removal that it has subject matter jurisdiction, a plaintiff may not later defeat federal jurisdiction by stipulating that his claims amount to $75,000 or less, as Lottinger has attempted to do in this case.[13] State Farm indicates that Lottinger claims actual damages, personal property damage, loss of use, and living expenses, and may also seek statutory penalties, making this Court's jurisdiction appropriate.[14]

Further, State Farm argues that even if this Court could not properly ascertain from Lottinger's state court petition that the amount in controversy exceeded $75,000 at the time of removal, its Notice of Removal provides further evidence and legal argument confirming that this dispute meets the jurisdictional minimum.[15] Specifically, State Farm points to a report from an adjuster stating that it would cost $45,748.55 to repair Lottinger's home; it further argues that the alleged availability of $22,874 in statutory penalties based on the engineering firm's estimate and Plaintiff's claims for personal property damage, loss of use, and living expenses show that more than $75,000 is in dispute here.[16] Finally, arguing that this Court's decision in *Pooley v. State Farm Mutual Auto Insurance Company* is analogous to the present case, State Farm argues that Lottinger's claims for statutory penalties and attorney's fees establish that the amount in controversy here exceeds Lottinger's stipulated quantity of actual damages.[17]

---

[13] *Id.* at 3–6.

[14] *Id.* at 8.

[15] *Id.* at 6–8.

[16] *Id.*

[17] *Id.* at 8–9.

### III. Law

**A.      Standard for Removal: Original Jurisdiction**

As a general rule, a defendant may remove a state civil action to federal court if the federal court has original jurisdiction over the action.[18] As the removing parties, defendants bear the burden of showing that federal jurisdiction exists.[19] When determining whether removal is appropriate, district courts recognize that federal courts are courts of limited jurisdiction.[20] In assessing whether removal was appropriate, the Court is guided by the principle that "removal statute[s] should be strictly construed in favor of remand."[21] If any doubt remains as to jurisdiction, the Court should construe ambiguities against removal and remand the case.[22] Although a district court must remand the case to state court if it ever appears, before final judgment, that the court lacks jurisdiction, subject matter jurisdiction is fixed at the time of removal.[23]

---

[18]   28 U.S.C. § 1441(a) ("Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending"); *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 34 (2002) ("Section 1441 requires that a federal court have original jurisdiction over an action in order for it to be removed from a state court.").

[19]   *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995) ("[I]t is well settled that the removing party bears the burden of establishing the facts necessary to show that federal jurisdiction exists.")

[20]   *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001) ("Federal courts are courts of limited jurisdiction. We must presume that a suit lies outside this limited jurisdiction[.]")

[21]   *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) ("Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand.") (citations omitted).

[22]   *Shamrock Oil & Gas Corp. v. Sheets*, 313 US. 100, 109 (1941) ("Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined."); *Butler v. Polk*, 592 F.2d 1293, 1296 (5th Cir. 1979) ("[I]t is axiomatic that ambiguities are generally construed against removal.")

[23]   28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."); *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 456 (5th Cir. 1996) (quoting *Freeport–McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991)) ("We have consistently held that if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events.").

Thus, if this Court has original jurisdiction over this suit, State Farm properly removed this case, and Lottinger's Motion to Remand must be denied. However, if this Court does not have original jurisdiction over the action, removal was improper, and Plaintiff's Motion to Remand must be granted.[24]

## 1. Diversity Jurisdiction

In its "Notice of Removal," State Farm bases this Court's jurisdiction exclusively on diversity pursuant to 28 U.S.C. § 1332.[25] Diversity jurisdiction exists when the plaintiffs and defendants are completely diverse at the time of filing and the amount in controversy exceeds $75,000.[26] The "burden of proving the facts necessary to sustain jurisdiction" rests on the party invoking the Court's jurisdiction.[27] "Failure adequately to allege the basis for diversity jurisdiction mandates dismissal."[28] The basis of jurisdiction "cannot be established argumentatively or by mere inference."[29]

### a. Amount in Controversy

In the present case, the only jurisdictional issue in dispute is whether Lottinger's claims amount to $75,000 or more. In Louisiana courts, plaintiffs (1) may not specify the numerical value

---

[24] *See Howery,* 243 F.3d at 921 (concluding that the district court did not have jurisdiction over a case removed from state court, and remanding the case to the district court with instructions to dismiss it).

[25] Rec. Doc. 1 at 2–9.

[26] *Lincoln Property Co. v. Roche*, 546 U.S. 81, 89 (2005) ("The principal federal statute governing diversity jurisdiction, 28 U.S.C. § 1332, gives federal district courts original jurisdiction of all civil actions "between ... citizens of different States" where the amount in controversy exceeds $75,000. Since *Strawbridge v. Curtiss*, 7 U.S. 267, (1806), we have read the statutory formulation 'between ... citizens of different States' to require complete diversity between all plaintiffs and all defendants.").

[27] *Harvey Constr. Co. v. Robertson-Ceco Corp.*, 10 F.3d 300, 303 (5th Cir. 1994) (internal citations omitted).

[28] *Stafford* v. *Mobil Oil Corp.*, 945 F.2d 803, 804-05 (internal citations omitted).

[29] *Illinois C. G. R. Co. v. Pargas, Inc.*, 706 F.2d 633, 636 (5th Cir. 1983).

of a claim for damages, and (2) may receive relief not requested in the pleadings.[30] Thus, a defendant seeking removal from Louisiana state court to federal court must prove by a preponderance of evidence that the amount in controversy exceeds $75,000.[31] A court may conclude that removal is proper when it is "facially apparent" that the plaintiff's claims exceed $75,000, or, alternatively, when the defendant sets forth "the *facts* in controversy," either in the removal petition or by affidavit, "that support a finding of the requisite amount."[32] If it is not "facially apparent" that a plaintiff's claims exceed the jurisdictional threshold, "the court may rely on 'summary-judgment-type' evidence to ascertain the amount in controversy."[33]

If the defendant meets its burden, the plaintiff resisting removal must show that it is legally certain that he will not be able to recover more than the damages sought in his state court pleadings.[34] In Louisiana, plaintiffs may stipulate in their pleadings that the amount in controversy does not exceed a specific amount.[35] Where a plaintiff who makes such a stipulation seeks to defeat federal jurisdiction, the United States Court of Appeals for the Fifth Circuit requires the plaintiff to

---

[30] *See* LA. CODE CIV. P. art 893 ("No specific monetary amount of damages shall be included in the allegations or prayer for relief of any original, amended, or incidental demand."); LA. CODE CIV. P. art. 862 ("Except as provided in Article 1703, a final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings and the latter contain no prayer for general and equitable relief.").

[31] *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999).

[32] *Allen*, 63 F.3d at 1335–36.

[33] *White v. FCI USA, Inc.*, 319 F.3d 672, 675 (5th Cir. 2003).

[34] *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1411 (5th Cir. 1995) ("[I]f a defendant can show that the amount in controversy actually exceeds the jurisdictional amount, the plaintiff must be able to show that, as a matter of law, it is certain that he will not be able to recover more than the damages for which he has prayed in the state court complaint.")

[35] *See In Re 1994 Exxon Chemical Fire*, 558 F.3d 378, 389 (5th Cir. 2009) (explaining that parties in Louisiana courts may stipulate to the amount in controversy by making a "judicial confession" under Article 1853 of the Louisiana Code of Civil Procedure, which provides that "[a] judicial confession is a declaration made by a party in a proceeding[;] [t]hat confession constitutes full proof against the party who made it.")

"affirmatively waive the right to *accept* a judgment in excess of the jurisdictional amount in order for his pre-removal state-court stipulations to bind him."[36] In *In Re 1994 Exxon Chemical Fire*, the United States Court of Appeals for the Fifth Circuit reasoned that because Louisiana law permitted the plaintiffs to recover damages not requested in their pleadings, their mere stipulation regarding the amount in controversy would not prevent them from actually *accepting* an award larger than the stipulated amount.[37] Thus, because the plaintiffs in that case did not expressly state that they would *refuse to accept* more than the jurisdictional amount, the United States Court of Appeals for the Fifth Circuit concluded that the district court properly found subject matter jurisdiction.[38]

### b. Plaintiff's Evidence Against Diversity Jurisdiction

"The jurisdictional facts that support removal must be judged at the time of the removal."[39] If the Court properly acquires diversity jurisdiction over a case, subsequent events that call into question the amount in controversy do not "divest the court of diversity jurisdiction."[40] The United States Court of Appeals for the Fifth Circuit has emphasized that the "plaintiff must make all [jurisdiction-related] information known at the time he files the complaint."[41] The United States Court of Appeals for the Fifth Circuit has also stated, however, that a plaintiff may challenge

---

[36] *Id.*

[37] *Id.*

[38] *Id.* ("In the instant actions . . . the plaintiffs merely alleged that the amount in controversy did not exceed the jurisdictional amount; they did not deny that they would accept more than $50,000. Courts have held that, because, under [Louisiana law], plaintiffs are not limited to recovery of the damages requested in their pleadings, a plaintiff must affirmatively waive the right to accept a judgment in excess of the jurisdictional amount in order for his pre-removal state-court stipulations to bind him.").

[39] *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883–84 (5th Cir. 2000).

[40] *De Aguilar*, 47 F.3d at 1411.

[41] *Grant v. Chevron Phillips Chem. Co.,* 309 F.3d 864, 869 (5th Cir. 2002).

diversity jurisdiction through affidavits, stipulations, and amendments to the pleadings, but only where the "basis for jurisdiction is ambiguous at the time of removal."[42] In *Gebbia v. Wal-Mart Stores, Inc.*, for example, the Fifth Circuit affirmed the district court's order denying the plaintiff's motion to remand because it was apparent on the face of the plaintiff's state court petition that her claim exceeded $75,000, even though the plaintiff: (1) allegedly learned during discovery that her claims would amount to less than $75,000; (2) subsequently stipulated to damages less than $75,000; and (3) filed an affidavit with the court.[43]

## IV. Analysis

### A.     Whether the Court Has Original Jurisdiction

In his motion, Lottinger argues that the Court lacks subject matter jurisdiction over the case because he has "renounced his right to enforce a judgment over $75,000" and "certifies to the Court that the amount in dispute is $75,000 or less," requiring the Court to remand the action.[44] In opposition, State Farm asserts that Lottinger did not limit his recovery to $75,000 or less until after it removed the case and invoked this Court's subject matter jurisdiction over the action.[45] Since Lottinger purports to have "renounced his right to enforce a judgment over $75,000" and presently "certifies to the Court" that the amount in dispute is less than $75,000, the main issues in dispute are (1) whether the Court had jurisdiction at the time of removal, and (2) whether Lottinger may now challenge the Court's jurisdiction.

---

[42] *Gebbia*, 233 F.3d at 883.

[43] *Id.* at 882–84.

[44] Rec. Doc. 8–1 at 4–5.

[45]  Rec. Doc. 11 at 3.

## 1.     Whether the Court Had Jurisdiction at the Time of Removal

A defendant may remove a state civil action to federal court if the federal court has original jurisdiction over the action.[46] As the removing party, the defendant bears the burden of showing that federal jurisdiction exists.[47] Subject matter jurisdiction is fixed at the time of removal, and cannot be eliminated by events that occur after removal.[48] Thus, the initial question in the present case is whether State Farm met its burden of showing that federal jurisdiction existed at the time of removal. In its Notice of Removal,[49] State Farm claims that the Court has diversity jurisdiction because (1) complete diversity of citizenship exists,[50] and (2) the amount in controversy exceeds $75,000.[51] Under *Luckett*, State Farm must prove by a preponderance of evidence that the amount in controversy exceeds $75,000.[52] It may meet its burden when it is "facially apparent" that the

---

[46]   28 U.S.C. § 1441(a) ("Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending"); *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 34 (2002) ("Section 1441 requires that a federal court have original jurisdiction over an action in order for it to be removed from a state court.").

[47]   *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995) ("[I]t is well settled that the removing party bears the burden of establishing the facts necessary to show that federal jurisdiction exists.")

[48]   28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."); *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 456 (5th Cir. 1996) ("We have consistently held that if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events.").

[49]   Rec. Doc. 1.

[50]   State Farm alleges that it is a "foreign insurer duly organized under the laws of Illinois and having its principal place of business in the State of Illinois and is therefore domiciled in the State of Illinois. Plaintiff is a citizen of Louisiana." Rec. Doc. 1 at 9.

[51]   Rec. Doc. 1 at 3–8.

[52]   *Luckett*, 171 F.3d at 298.

9

plaintiff's claims exceed $75,000, or, alternatively, when it sets forth "the *facts* in controversy," either in the removal petition or by affidavit, "that support a finding of the requisite amount."[53]

Lottinger's state court petition asserts that:

> [1] [Lottinger] contracted with State Farm to provide insurance[;] [2] [Lottinger] timely notified State Farm of the loss after Hurricane Isaac which caused damage to [Lottinger's] property[;] [3] State Farm sent an insurance adjuster to the property to determine the scope of damage. The amount of damage determined by State Farm's adjuster was inadequate. [3] As of the date of filing this Petition, State Farms [sic] has not tendered [Lottinger] a sufficient amount of money despite having sufficient time to investigate his loss. As such, State Farm is in bad faith under LA. REV. STAT. §§ 22:1892 and 22:1973 . . . [4] Despite having been provided with a a "satisfactory proof of loss," and despite conducting its own thorough investigation of the damages [Lottinger] incurred from Hurricane Isaac, State Farm has, in bad faith, refused to pay for all of the damages sustained to [Lottinger's] policy and caused by this covered loss.[54]

For these reasons, Lottinger asserts in his state court petition, State Farm is liable for:

> a. Loss of use of insured property; b. Loss of enjoyment of property; c. Loss of movable goods; d. Diminution in value of the property; e. Permanent repair and remediation expenses; f. Temporary repair and remediation expenses; g. Attorney's fees; h. Costs of this litigation; and i. All other losses that will be proven at the trial of this matter.[55]

Nonetheless, according to Lottinger, "[t]he matter in controversy is less than $75,000.00, exclusive of interests and costs."[56] On the basis of the pleadings alone, it is not possible to ascertain how much Lottinger seeks from State Farm. All of Lottinger's claims, save for attorney's fees and litigation costs, depend on the extent of damage to his home and losses resulting from that damage. In his complaint, Lottinger does not describe the damage. Therefore, it is necessary to consider whether

---

[53] *Allen*, 63 F.3d at 1336.

[54] Rec. Doc. 1–2 at 4.

[55] *Id.* at 5.

[56] *Id.* at 4.

State Farm, in its Notice of Removal, provides facts that establish, by a preponderance of the evidence, that the amount in controversy exceeds $75,000.

Arguing that this Court's decision in *Pooley v. State Farm Mutual Auto Insurance Company* is analogous to the present case, State Farm contends that Lottinger's claims for statutory penalties and attorney's fees establish that the amount in controversy here exceeds Lottinger's stipulated quantity of actual damages.[57] In its Notice of Removal, State Farm asserts that "Plaintiff' [sic] petition **and the facts set forth in State Farm's removal petition** establish that the amount in controversy exceeds seventy-five thousand and no/100 ($75,000.00) dollars[.]"[58] Therefore, State Farm attempts to show that "the *facts* in controversy," either in the removal petition or in affidavits, "support a finding of the requisite amount."[59]

According to State Farm, the facts in controversy are as follows: (1) Lottinger's state court petition claims that "State Farm has not tendered Plaintiff an amount of any money despite having sufficient time to investigate Plaintiff's loss;" (2) State Farm's total potential liability amounts to $294,800 with respect to Lottinger's home, $29,480 for "Dwelling Extension" coverage, $221,000 for "loss of contents and personal property," and actual loss sustained for living expenses and loss of use; (3) Lottinger forwarded to State Farm a report from his adjuster assessing damage to Lottinger's home at $45,748.50; and (4) Lottinger seeks statutory penalties, which amount to $22,874, and are to be considered when evaluating the amount in controversy at the time of

---

[57] *Id.* at 8–9.

[58] Rec. Doc. 1 at 3.

[59] *Allen*, 63 F.3d at 1336.

11

removal.[60] Since the sum of the adjuster's estimated damage and the statutory penalties amounts to $68,622.75, and does not include attorney's fees, claims for personal property, contents damage, or other damage, State Farm argues that the amount in controversy exceeds $75,000. A discussion of these items follows below.[61]

### a. State Farm's Total Potential Liability to Lottinger

State Farm alleges that, pursuant to the insurance policy issued to Lottinger, its total potential liability to Lottinger amounts to well over $75,000. State Farm cites *Buras v. Birmingham Fire Insurance Company of Pennsylvania* in support of the proposition that "[w]hen the dispute in controversy concerns the coverage provided by an insurance policy, the object of the litigation is the insurer's total potential liability, including the insurer's contractual liability under that policy."[62] This case does not support State Farm's assertion. In *Buras*, a very brief published *per curiam* opinion, the United States Court of Appeals for the Fifth Circuit affirmed the district court's determination that an insurance exaction provided by LA. REV. STAT. § 22:1811 (formerly 22:656) constituted a "penalty," rather than "interest," for purposes of the amount-in-controversy requirement.[63] It did not state that the total coverage amount of an insurance policy establishes the amount in controversy where the total coverage amount is not claimed due by the insured. State Farm cites no other

---

[60] Rec. Doc. 1 at 3–5.

[61] It is uncontested that State Farm has not paid Lottinger.

[62] Rec. Doc. 1 at 4 (citing 327 F.2d 238 (5th Cir. 1964)).

[63] 327 F.2d 238–39. LA. REV. STAT. § 22:1811 now provides that:

All death claims arising under policies of insurance issued or delivered within this state shall be settled by the insurer within sixty days after the date of receipt of due proof of death, and if the insurer fails to do so without just cause, the amount due shall bear interest at the rate of eight percent per annum from date of receipt of due proof of death by the insurer until paid.

authority on this point. Therefore, its assertion fails for lack of support.

### b. The Report from Lottinger's Adjuster

State Farm also alleges that Lottinger, through counsel, sent it an estimate for repairs and remediation in the amount of $45,748.50 on April 29, 2013.[64] The parties do not deny the existence of the report or its content. Characterizing this estimate as a "demand," State Farm argues that this Court can consider it "in support of State Farm's burden to show by a preponderance of the evidence that the amount in controversy exceeds the $75,000 jurisdictional amount."[65] In support of this proposition, State Farm cites, among other cases, three published decisions of the United States Court of Appeals for the Fifth Circuit: *Wilson v. Belin*,[66] *Addo v. Global Life & Acc. Ins. Co.*,[67] and *Hartford Ins. Group v. Lou-Con, Inc.*[68]

In *Wilson*, the United States Court of Appeals for the Fifth Circuit rejected, in a footnote, the plaintiff's argument that the amount-in-controversy requirement was not met because the complaint listed no specific quantum of damages; specifically, the court stated that:

---

[64] In his state court petition, Lottinger asserts that State Farm has a "satisfactory proof of loss," although he does not specify what this proof is. Rec. Doc. 1–2 at 4.

[65] Rec. Doc. 1 at 4.

[66] 20 F.3d 644, 651 (5th Cir. 1994).

[67] 230 F.3d 759, 762 (5th Cir. 2000).

[68] 293 F.3d 908 (5th Cir. 2002). State Farm also cites: (1) *Pollett v. Sears Roebuck & Co.*, an unpublished decision of the United States Court of Appeals for the Fifth Circuit; (2) *Scott v. Haggerty*, an unpublished district court opinion, and (3) *McGlynn v. Huston*, all of which allegedly address whether demand letters may be considered as evidence that the amount-in-controversy requirement is satisfied. Rec. Doc. 1 at 5–6 (citing *Pollett*, 46 Fed. Appx. 226, (5th Cir. 2002); *Scott*, No. 12. 1882, 2013 WL 1856074 (E.D. La. 2013) (Fallon, J); *McGlynn*, 693 F.Supp.2d 585 (M.D. La. 2010).

> Because the record contains a letter, which plaintiff's counsel sent to defendants stating that the amount in controversy exceeded $50,000, it is 'apparent' that removal was proper.[69]

In the present case, the estimate Lottinger sent to State Farm amounted to $47,748.50, which is below the requisite $75,000. Nonetheless, *Wilson* suggests that Lottinger's letter may help in determining whether this Court properly had jurisdiction at the time of removal.

In *Addo*, the United States Court of Appeals for the Fifth Circuit held that a demand letter transmitted after a plaintiff files suit may demonstrate, under 28 U.S.C. § 1446(b)(3), that a case is removable.[70] The court, construing the statute, reasoned that "holding that a post-complaint letter, which is not plainly a sham, may be 'other paper' under § 1446(b)(3) is consistent with the purpose of the removal statute to encourage prompt resort to federal court when a defendant first learns that the plaintiff's demand exceeds the federal jurisdictional limit."[71]

Here, Lottinger sent State Farm its estimate on April 29, 2013, and filed its state court petition on August 28, 2013.[72] The estimate was, accordingly, a pre-complaint communication between Lottinger and State Farm. In *Addo*, the court specifically addressed whether a *post-complaint* demand letter gave the defendant notice that the thirty-day time line for removal had

---

[69] *Wilson*, 20 F.3d 644, 651 n.8 (5th Cir. 1994).

[70] Section 1441(b)(3) provides that:

Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

[71] 230 F.3d at 761–62.

[72] Rec. Doc. 1 at 5; Rec. Doc. 1–2 at 3.

started running. Accordingly, it is inapposite here, where neither a post-complaint demand letter, nor the timeliness of removal, are at issue.

Finally, in *Hartford*, a published *per curiam* opinion, the United States Court of Appeals for the Fifth Circuit illustrated that courts may consider pre-suit demand letters when evaluating whether a case satisfies the amount-in-controversy requirement. There, the plaintiff sent the defendant a demand letter in August, 2001; after the defendant rejected the plaintiff's demand, the plaintiff filed a declaratory action in December 2001.[73] The district court apparently relied only on the demand letter to ascertain the amount in controversy,[74] and the United States Fifth Circuit Court of Appeals affirmed the district court's finding that the demand letter did not state a sufficient amount to satisfy the minimum requirement.[75]

In *McGlynn*, another district court considered a defendant's "summary judgment-type" evidence, including a pre-complaint demand letter, and concluded that the defendant had not adduced any competent proof that the amount in controversy met the jurisdictional threshold.[76] resolving "all doubts and ambiguities in favor of remand," the court granted the plaintiff's motion to remand.[77]

---

[73] 293 F.3d 908, 909–10 (5th Cir. 2002).

[74] *Id.* at 910 ("Since Hartford's petition neither sets forth the policy limits nor gives any indication of the amount in controversy, the district court based its determination of the jurisdictional amount on the information in Lou–Con's demand letter.")

[75] *Id.* at 912 ("The only evidence available is (1) that Lou–Con seeks $261.42 in defense costs from Hartford and (2) that Tullos may be covered by Hartford's policy for less than two of the twenty-seven years during which he worked for Lou–Con and allegedly suffered asbestos-related injury. Based on this information, we cannot conclude that Hartford's potential liability will meet the jurisdictional threshold.")

[76] 693 F.Supp.2d 588–89.

[77] *Id.* at 590.

Considering *Hartford*, pre-complaint demand letters appear to fall within the category of "summary-judgment-type evidence" that courts, under *FCI*, may consider when resolving a motion to remand. Nonetheless, even if the court considers Lottinger's adjuster estimate to be a "demand letter," that estimate only establishes that $45,748.50 is in controversy. It is therefore necessary to consider State Farm's remaining arguments.

### c.  Lottinger's Statutory Penalty Claims

Lottinger seeks statutory penalties under LA. REV. STAT. §§ 22:1892 and 22:1973; State Farm alleges that Lottinger's claimed penalties under § 22:1892 (1) amount to $22,874.35, and (2) are to be considered when evaluating the amount in controversy at the time of removal.[78] In Section (A)(1), LA. REV. STAT. § 22:1892 provides that:

> All insurers issuing any type of contract, other than those specified in R.S. 22:1811, 1821, and Chapter 10 of Title 23 of the Louisiana Revised Statutes of 1950, shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest.

In Section (B)(1), LA. REV. STAT. § 22:1892 provides that:

> Failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor or failure to make a written offer to settle any property damage claim, including a third-party claim, within thirty days after receipt of satisfactory proofs of loss of that claim, as provided in Paragraphs (A)(1) and (4) of this Section, respectively, or failure to make such payment within thirty days after written agreement or settlement as provided in Paragraph (A)(2) of this Section when such failure is found to be arbitrary, capricious, or without probable cause, **shall subject the insurer to a penalty, in addition to the amount of the loss, of fifty percent damages on the amount found to be due from the insurer to the insured, or one thousand dollars, whichever is greater**, payable to the insured, or to any of said employees, or in the event a partial payment or tender has been made, fifty percent of the difference between the amount paid or tendered and the amount found to be due **as well as reasonable attorney fees and costs**. Such penalties, if awarded,

---

[78]  Rec. Doc. 1 at 6–7.

shall not be used by the insurer in computing either past or prospective loss experience for the purpose of setting rates or making rate filings.

Additionally, in Section (A), LA. REV. STAT. § 22:1973 states that:

> An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. **Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.**

In Section (B), LA. REV. STAT. § 22:1973 provides that the following acts constitute a breach of duty

by an insurer:

> (1) Misrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue; (2) Failing to pay a settlement within thirty days after an agreement is reduced to writing; (3) Denying coverage or attempting to settle a claim on the basis of an application which the insurer knows was altered without notice to, or knowledge or consent of, the insured; (4) Misleading a claimant as to the applicable prescriptive period; (5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause; (6) Failing to pay claims pursuant to R.S. 22:1893 when such failure is arbitrary, capricious, or without probable cause.

In Section (C), LA. REV. STAT. § 22:1973 sets forth the penalty for breach:

> **In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater**. Such penalties, if awarded, shall not be used by the insurer in computing either past or prospective loss experience for the purpose of setting rates or making rate filings.

State Farm only addresses the 50% penalty set forth in LA. REV. STAT. § 22:1892, and argues

that 50% of the $45,748.50 reported by Lottinger's adjuster—$22,874.35—should be considered as

part of the amount in controversy. In support of this proposition, State Farm cites *St. Paul*

*Reinsurance Corp., Ltd. v. Greenberg*, a declaratory judgment action in which the United States

Court of Appeals for the Fifth Circuit applied the amount-in-controversy test discussed in the present Order.[79] There, the court concluded that Texas statutes penalizing insurers who delay making payments to claimants should be considered as part of the amount in controversy under 28 U.S.C. § 1332.[80]

Given that the Louisiana statutes at issue in the present case provide for "penalties," they appear to be similar to those at issue in *St. Paul Reinsurance*. Moreover, as the *St. Paul Reinsurance* court noted, *Buras* held that Louisiana statutory exactions assessed for late payment of life insurance proceeds fall within the scope of Section 1332's amount in controversy calculations.[81] These decisions suggest that the statutory penalties at issue in the present case also fall within the scope of the amount-in-controversy calculations.

Thus, if Lottinger's adjuster estimate provides the basis for the statutory penalties, then the amount in controversy in the present case may be $45,748.50 plus the 50% penalty provided by LA. REV. STAT. § 22:1892, or $68,622. Lottinger, however, also alleges that State Farm has breached its duty of good faith and fair dealing, permitting it to seek a penalty under LA. REV. STAT. § 22:1973. Under Louisiana law, Lottinger could recover the greater of the penalties for which these two statutes provide. In *Katie Realty, Ltd. v. Louisiana Citizens Property Insurance Corporation*, the Louisiana Supreme Court reasoned that:

> [W]hile both LA.REV.STAT. §§ 22:1892 and 1973 mandate insurers have an affirmative duty to pay a settlement within thirty days of a written settlement agreement, plaintiff contends LA.REV.STAT. § 22:1892 nevertheless controls because, as this Court has held, when statutes prescribe penalties for the same misconduct, the

---

[79] 134 F.3d 1250, 1253–54 (5th Cir. 1998).

[80] *Id.* at 1254–55.

[81] *Id.* at 1255.

statute with the greater penalty supersedes the other. *Calogero v. Safeway Ins. Co. of Louisiana*, 99–1625, p. 7 (La.1/19/00), 753 So.2d 170, 174.[82]

In *Calogero*, the Louisiana Supreme Court, construing LA. REV. STAT. §§ 22:658 and 22:1220 (which were later renumbered to §§ 22:1892 and 22:1973, respectively[83]) held that:

> [W]here LA. REV. STAT. 22:1220 provides the greater penalty, LA. REV. STAT. 22:1220 supersedes LA. REV. STAT. 22:658 such that [the plaintiff] cannot recover penalties under both statutes.[84]

Although *Katie Realty* and *Calogero* addressed claims involving misconduct within the scope of both LA. REV. STAT. §§ 22:1892 and 1973, the Louisiana Supreme Court has held that the measure of the penalties under each statute is different. In *Durio v. Horace Mann Ins. Co.*, the Louisiana Supreme Court provided that:

> The duties of an insurer under LA. REV. STAT. § 22:1220 are separate and distinct from its duties under the insurance contract. Thus, a claim against an insurer for breach of the insurance contract and a claim against an insurer for breach of its duty of good faith and fair dealing under LA. REV. STAT § 22:1220 are two separate causes of action. **Because it is a violation of the statute, not a breach of the insurance contract, which triggers the penalty provision, it would be inconsistent to hold**

---

[82] 2012-0588 (La. 10/16/12), 100 So.3d 324, 330.

[83] *Oubre v. Louisiana Citizens Fair Plan*, 2011-0097 (La. 12/16/11), 79 So.3d 987, 990 n.1. ("Both LA. REV. STAT. §§ 22:658 and 22:1220 were renumbered pursuant to La. Acts 2008, No. 415 to LA. REV. STAT. §§ 22:1892 and 22:1973, respectively.") .

[84] 753 So.2d at 174. *See, e.g. Audubon Orthopedic and Sports Medicine, APMC v. Lafayette Ins. Co.*, 2009-0007 (La. App. 4 Cir. 4/21/10), 38 So.3d 963. In *Audubon*, the Louisiana Fourth Circuit Court of Appeal noted that "the Louisiana Supreme Court has held that the offending insurer cannot be penalized under both statutes; [and] therefore, whichever statute imposes the greater penalty supercedes the other statute such that the greater penalty is applied." *Id.* at 972. "When there are no damages sustained" by an insurer's breach of duty," the Court of Appeal reasoned, "the trial court may award a maximum of $5,000.00 in penalties" under LA. REV. STAT. § 22:1220. Noting that the plaintiff had not proven damages sustained by the insurer's breach of duty, the Court of Appeal concluded that "in the instant case the greater penalty would be that assessed pursuant to LA. REV. STAT. § 22:658." *Id.* at 977–78. Applying LA. REV. STAT. § 22:658, the Court of Appeal amended the trial court's judgment to incorporate the then-applicable 25% penalty. *Id.* at 977–78.

**that contractual amounts due pursuant to the terms of the contract should be included as "damages sustained" under LA. REV. STAT 22:1220.**

Thus, following proper guidelines of statutory interpretation, and being mindful that statutes subjecting insurers to penalties are considered penal in nature and should be strictly construed, we . . . find that LA. REV. STAT § 22:1220 penalties are determined with reference to LA. REV. STAT. § 22:1220 damages only. **A logical and consistent reading of the statute mandates a finding that contractual damages due or awarded under the insurance contract should not be used to calculate penalties under the statute**. Rather, penalties are calculated by doubling the amount of damages attributable to the insurer's breach of duties imposed under the statute.[85]

Applying *Durio*, Lottinger's adjuster estimate, which provides a basis for his claims under his insurance contract with State Farm, may serve as the measure for penalties under LA. REV. STAT. § 22:1892. Since the adjuster estimate goes to Lottinger's contractual claim, however, it *cannot* provide the measure of damages for penalties under LA. REV. STAT. § 22:1973, as construed in *Durio*. Accordingly, if the Court is to include Lottinger's claimed LA. REV. STAT. § 22:1973 penalties in its amount-in-controversy calculations, it must find a basis for those penalties beyond Lottinger's insurance claim itself. If such a basis lies anywhere, it will lie in one or more of Lottinger's non–contractual claims.

### d. Lottinger's Other Claims

If the Court includes Lottinger's adjuster estimate in its amount incontroversy analysis, and accepts State Farm's assertion that Lottinger may be eligible for $22,874 in penalties under LA. REV. STAT. § 22:1892, then a gap of $6,377 remains between Lottinger's claims and the $75,000 jurisdictional threshold. State Farm contends that Lottinger makes claims in his state court petition

---

[85] 2011-0084 (La. 10/25/11), 74 So.3d 1159, 1170–71. *See also Audubon*, 38 So.3d at 973 ("The amount of penalties that can be awarded under [La. Rev. Stat. § 22:1873 is based *upon the damages sustained by the breach*, not the damages claimed or awarded.").

that permit the Court to bridge that gap. In his state court petition, Lottinger claims damages arising from (1) loss of use of insured property; (2) loss of enjoyment of property; (3) loss of movable goods; (4) diminution in value of the property; (5) permanent repair and remediation expenses; (6) temporary repair and remediation expenses; (7) attorney's fees; (8) costs of this litigation; and (9) all other losses that will be proven at the trial of this matter.[86] State Farm must show by a preponderance of the evidence that the other damages claims, plus his attorney's fee claim,[87] amount to $75,000 or more when added to his contractual claim and related penalties under LA. REV. STAT. § 22:1892. State Farm, however, provides no basis upon which to estimate the monetary value of these claims, and cites no authority to instruct the Court on how to do so.[88]

Accordingly, the Court must rely solely on Lottinger's state court petition to determine the monetary value of his non-contractual claims. The petition, however, only states that Lottinger is entitled to damages; it provides no basis for determining their value. Accordingly, the Court can only speculate about whether the claims suffice to establish that $75,000 is in controversy. The fact that these claims *might* establish that Lottinger's claims meet the jurisdictional minimum is not enough

---

[86] Rec. Doc. 1–2 at 5.

[87] LA. REV. STAT. §22:1892(B)(1) provides for both penalties and attorney's fees. *See Kodrin v. State Farm Fire & Cas. Co.*, 314 Fed. App'x 671, 679 (5th Cir. 2009) ("Under Louisiana law, an insurer owes its policyholder a duty of good faith in settling claims. Failure to pay a claim within 30 days of being presented with satisfactory proof of loss is a breach of the duty if it is 'arbitrary, capricious, or without probable cause.' In Louisiana, such a breach exposes the insurer to liability for damages and discretionary penalties under R.S. 22:1220 or to penalties and attorneys' fees under R.S. 22:658.") *See* CHARLES A. WRIGHT ET AL., 14AA FEDERAL PRACTICE AND PROCEDURE § 3702.5(4th Ed. 2014) ("[A]ttorney fees are includible in computing the jurisdictional amount if the plaintiff may recover them as an element of damages as a matter of right, either pursuant to a governing statute, contract, or under the district court's equitable power to award fees.").

[88] State Farm contends that the present case is analogous *Pooley*, in which this Court denied the plaintiff's motion to remand. *See Pooley*, No. 13-0918, 2013 WL 3356873. In *Pooley*, however—and unlike the present case—the plaintiff sought damages for mental pain and suffering, a type of claim that the United States Court of Appeals for the Fifth Circuit has held to establish a facially apparent case that the jurisdictional minimum has been satisfied. *See Id.* at 5.

21

to support a finding that these claims *do* establish, by a preponderance of the evidence, that the jurisdictional threshold has been crossed. As the United States Court of Appeals for the Fifth Circuit has stated, "[a] 'could well' standard sounds more like a 'possibility' standard of proof, rather than a 'more likely or not' standard."[89] Mindful that it must construe ambiguities against removal,[90] the Court cannot conclude, based on speculation alone, that Lottinger's other claims establish that federal jurisdiction is proper in this case.

### 2. Whether Lottinger May Now Challenge the Court's Jurisdiction

According to State Farm, a plaintiff cannot defeat federal jurisdiction by stipulating that his claims amount to $75,000 or less, as Lottinger has attempted to do in this case.[91] "The jurisdictional facts that support removal must be judged at the time of the removal."[92] If the Court properly acquires diversity jurisdiction over a case, subsequent events that call into question the amount in controversy do not "divest the court of diversity jurisdiction."[93] Here, however, State Farm has not carried its burden of showing, by a preponderance of the evidence, that the amount in controversy

---

[89] *Allen*, 63 F.3d at 1336.

[90] *Shamrock Oil & Gas Corp. v. Sheets*, 313 US. 100, 109 (1941) ("Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined."); *Butler v. Polk*, 592 F.2d 1293, 1296 (5th Cir. 1979) ("[I]t is axiomatic that ambiguities are generally construed against removal.")

[91] *Id.* at 3–6.

[92] *Gebbia*, 233 F.3d at 883–84.

[93] *Id. See also St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 292 (1938) ("Events occurring subsequent to removal which reduce the amount recoverable, whether beyond the plaintiff's control or the result of his volition, do not oust the district court's jurisdiction once it has attached").

in the present case exceeded $75,000 at the time of removal.[94] Therefore, the Court need not address whether Lottinger may defeat federal jurisdiction by stipulating to damages below $75,000.

### V. Conclusion

State Farm has not shown, by a preponderance of the evidence, that Lottinger's state court petition states claims that amount to $75,000 or more. If Lottinger's adjuster estimate is the proper basis for measuring the amount in controversy, and if—taking the facts in his complaint as true—Lottinger is eligible to seek statutory penalties, Lottinger has stated a claim that amounts to at least his actual damages of $45,748.50, plus a penalty $22,874 under LA. REV. STAT. § 22:1892. Adding these amounts together, Lottinger's claims fall short of $75,000. Since State Farm does not provide a basis upon which the Court can close the gap, it has failed to establish that the present litigation satisfies the requirements of 28 U.S.C. § 1332. The Court is therefore compelled to conclude that it lacks jurisdiction over Lottinger's claims.

Accordingly,

IT IS HEREBY ORDERED that Lottinger's "Motion to Remand"[95] is **GRANTED**.

**NEW ORLEANS, LOUISIANA**, this  5th  day of September, 2014.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[94]  *De Aguilar*, 47 F.3d at 1411 ("[I]f a defendant can show that the amount in controversy actually exceeds the jurisdictional amount, the plaintiff must be able to show that, as a matter of law, it is certain that he will not be able to recover more than the damages for which he has prayed in the state court complaint.")

[95]  Rec. Doc. 8.